## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MILDRED PEREZ,

               Plaintiff,

v.                                      Case No. 6:23-cv-258-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

               Defendant.

_____/

## OPINION AND ORDER[2]

## I.  Status

     Mildred Perez ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of fibromyalgia, herniated discs in her back, scoliosis, irritable bowel syndrome, carpal tunnel, arthritis, headaches, neuropathy, vein insufficiency, and depression. Transcript of

---

     [1]    Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

     [2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 17), filed April 12, 2023; Reference Order (Doc. No. 20), entered April 17, 2023.

Administrative Proceedings (Doc. No. 18; "Tr." or "administrative transcript"), filed April 12, 2023, at 156, 174, 193, 202, 348, 393, 403.

On September 8, 2020, Plaintiff protectively filed applications for DIB and SSI, alleging a disability onset date of September 3, 2020. Tr. at 313-19 (DIB); 320-31 (SSI).[3] The applications were denied initially, Tr. at 153, 155-72, 211, 212-14 (DIB); Tr. at 154, 173-90, 215-17, 218 (SSI), and upon reconsideration, Tr. at 192, 202-10, 229-32 (DIB); Tr. at 191, 193-201, 234-35 (SSI).

On April 14, 2022, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE").[4] Tr. at 45-82. At the time of the hearing, Plaintiff was forty-five (45) years old. Tr. at 50. On June 10, 2022, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 16-37.[5]

Thereafter, Plaintiff requested review of the Decision by the Appeals

---

[3]      The DIB and SSI applications were actually completed on September 11, 2020. Tr. at 313 (DIB), 320 (SSI). The protective filing date for both the DIB and SSI applications is listed elsewhere in the administrative transcript as September 8, 2020. Tr. at 156, 202 (DIB), 174, 193 (SSI).

[4]      The hearing was held via telephone, with Plaintiff's consent, because of extraordinary circumstances caused by the initial stages of the COVID-19 pandemic. Tr. at 48-49, 110, 239-52, 289-90, 293, 308.

[5]      The administrative transcript also contains a decision authored by an ALJ that adjudicated a DIB claim filed in 2015. Tr. at 134-43. That decision is not at issue here.

Council and submitted additional medical evidence. Tr. at 2, 5-6 (Appeals Council exhibit list and orders), 84-88 (medical evidence), 310-12 (request for review). On December 20, 2022, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, making the ALJ's Decision the final decision of the Commissioner. On February 15, 2023, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff on appeal raises two issues: 1) "[w]hether the ALJ provided adequate rationale when evaluating Plaintiff's testimony given Plaintiff's diagnosis of [f]ibromyalgia"; and 2) "[w]hether the ALJ failed to consider the explanations offered by the medical sources when evaluating the persuasiveness of their opinions." Memorandum in Support of Plaintiff (Doc. No. 26; "Pl.'s Mem."), filed May 26, 2023, at 18, 25 (emphasis omitted). On June 30, 2023, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 27; "Def.'s Mem.") addressing the issues. Then, as permitted, Plaintiff on July 5, 2023 filed a Supplemental Memorandum in Reply (Doc. No. 28; "Reply"). After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry through step four, where he ended the inquiry based upon his findings at that step. See Tr. at 19-36. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 3, 2020, the alleged onset date." Tr. at 19 (emphasis

---

[6]        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: fibromyalgia, degenerative disc disease [of the] lumbar spine, degenerative disc disease of the cervical spine, vertigo, tendinosis of the left shoulder, and carpal tunnel syndrome." Tr. at 19-20 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 23 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] lift and/or carry 10 pounds occasionally and 5 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for two hours in an eight-hour workday; occasional climbing of ramps or stairs but no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, and crouching; no crawling; frequent forward, lateral, and overhead reaching; frequent handling and fingering; must avoid concentrated exposure to extreme cold and extreme heat; and no exposure to hazardous machinery or unprotected heights.

Tr. at 27 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is capable of performing past relevant work [as a] medical receptionist and [an] emergency room secretary." Tr. at 36 (some emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from

September 3, 2020, through the date of th[e D]ecision." Tr. at 36 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against

the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## **IV. Discussion**

Plaintiff argues the ALJ erred in addressing her alleged symptoms, particularly in light of her fibromyalgia diagnosis, and in evaluating the medical opinions related to the diagnosis. Pl.'s Mem. at 18-25, 25-30; Reply at 1-8. Responding, Defendant contends the ALJ properly evaluated Plaintiff's fibromyalgia and adequately addressed the opinion evidence. Def.'s Mem. at 4-9, 9-11.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." <u>Holt</u>, 921 F.2d at 1223.

The Regulations in effect at the time of the ALJ's Decision provided that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security Ruling ("SSR") 12-2p, 2012 WL

3104869.[7] Particularly related to fibromyalgia, SSR 12-2p "provides guidance on how the [Administration] develops evidence that a person has a medically determinable impairment of fibromyalgia and how it evaluates fibromyalgia in disability claims." Sorter v. Soc. Sec. Admin., Comm'r, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing SSR 12-2p, 2012 WL 3104869).

There are two main ways set forth in SSR 12-2p for evaluating whether fibromyalgia is a medically determinable impairment. The first way requires a claimant to have "[a] history of widespread pain" that "may fluctuate in intensity and may not always be present," as well as "[a]t least 11 positive tender points on physical examination" with various requirements; and finally, "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p. The second way requires "[a] history of widespread pain"; "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." Id.

---

[7]     Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations that [the Administration has] adopted." 20 C.F.R. § 402.35(b)(1).

Once an ALJ determines that a claimant has the medically-determinable impairment of fibromyalgia, the ALJ proceeds with a symptom-evaluation process. Id. "If objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Administration is to] consider all of the evidence in the case record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant's] symptoms." Id.

Then, the fibromyalgia impairment is included in the five-step sequential evaluation process as with other impairments. Id. Importantly, when an ALJ is considering the RFC, SSR 12-2p directs that "for a person with [fibromyalgia,] we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" Id.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and

Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[8] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and

---

[8]     Plaintiff filed her applications after the effective date of section 404.1520c, so the undersigned applies the revised rules and Regulations.

(5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[9]

Here, the ALJ referenced SSR 12-2p and found Plaintiff's "fibromyalgia satisfies the criteria necessary to establish the condition as a medically determinable impairment."[10] Tr. at 26-27. Regarding Plaintiff's subjective

---

[9]    When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

[10]    The ALJ determined, however, that "[t]he record lacks evidence of a history of widespread pain; repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and evidence that other disorders could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." Tr. at 27. Evidently, then, the ALJ relied on the

(Continued…)

complaints of pain, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 28. In support, the ALJ observed that Plaintiff statements are "inconsistent due to cervical, lumbar, and shoulder imaging; stable longitudinal findings on examination; generally stable symptoms with treatment history including medication management and recommended physical therapy; and activities of daily living including driving, shopping, cleaning, cooking, and caring for her ill mother." Tr. at 28.

Although it is evident the ALJ took into account SSR 12-2p and its dictates with respect to the symptom evaluation, when it came time to address the opinions and findings of Plaintiff's treating providers Dr. Weiss and Ms. Meyer (who practice together), it is not so evident that the ALJ complied with the SSR's observation that a fibromyalgia patient has good days and bad days. Moreover, the ALJ's analysis of these matters contains inaccurate findings and other oddities that require reversal and remand for further proceedings.

---

other way set forth in SSR 12-2p for determining fibromyalgia was a medically determinable impairment (the one involving trigger points). There is a real question of whether the ALJ's finding that Plaintiff does not have repeated manifestations of six or more symptoms is supported by substantial evidence. However, the Court need not resolve that question in light of the ALJ's overall finding that Plaintiff's fibromyalgia was a medically determinable impairment.

The ALJ found unpersuasive the opinions and findings of Dr. Weiss and Ms. Meyer. Tr. at 35. In discussing the opinions, however, the ALJ mischaracterized objective medical findings of Ms. Meyer as "opinions":

> The undersigned is not persuaded by the opinions of APRN Meyer who opined [Plaintiff] had 2/5 grip strength and 3/5 lower extremity strength in January 2021 and who opined that [Plaintiff] had gait disturbance for fibromyalgia in March 2021.

Tr. at 35 (citing Ex. C9F, located at 582-84). The ALJ found Dr. Weiss's opinion on functional limitations and Ms. Meyer's "opinions" on strength and gait disturbance to be "inconsistent with . . . imaging and studies"; "generally stable longitudinal findings on examination; and treatment history with medication management." Tr. at 35. The ALJ neglected to take into account Ms. Meyer's opinion that Plaintiff needs to "rest 4-5 x/day" and "nap b/t 1-2 pm." Tr. at 584.

Perhaps the ALJ's rejection of the objective strength and gait findings would not be problematic if it were clear the findings were in error or the record did not otherwise support such findings. But that simply is not the case here. The ALJ stated, inaccurately, that the 2/5 grip strength and 3/5 lower extremity strength was inconsistent with Dr. Weiss and Ms. Meyer's own notes. Tr. at 35. In fact, the notes often contain these same findings. Tr. at 597 (Ms. Meyer's March 22, 2021 note documenting 2/5 bilateral grip strength and 3/5 bilateral knee lift on examination), 706 (Dr. Weiss's November 10, 2021 note documenting 2/5 bilateral grip strength and 3/5 bilateral knee lift on

14

examination), 723 (Dr. Weiss's December 13, 2021 note documenting 2/5 bilateral grip strength and 3/5 bilateral knee lift), 718 (Dr. Weiss's January 24, 2022 note documenting 2/5 bilateral grip strength and 3/5 bilateral knee lift on examination). Moreover, when earlier pointing out the alleged inconsistency in the notes, the ALJ relied a February 2021 note as evidencing normal gait and station, and normal strength in all extremities. Tr. at 30 (citing Ex. C10F/15, located at Tr. at 601). The problem with this particular note is that it documents a telehealth visit[11] in which an examination could not have been performed, as was often the case in some of the notes upon which the ALJ and Defendant rely in making the case that Plaintiff's examination findings were normal.

To the extent the ALJ relied on normal evaluation findings of other providers in determining not to accept the objective decreased strength findings of Dr. Weiss and Ms. Meyer, to be sure, there are some. See, e.g., Tr. at 554 (August 18, 2020 note documenting normal exam of extremities and normal gait), 579 (January 21, 2021 note documenting 5/5 motor strength in both upper and lower extremities), 726-28 (December 27, 2021 note documenting normal gait and 5/5 global motor strength), 749 (January 25, 2022 note documenting normal gait and extremities on examination), 730-32 (February 28, 2022 note

---

[11] These types of visits were common in the earlier stage of the COVID-19 pandemic, which coincided with the relevant timeframe under consideration here (alleged onset date of September 3, 2020 through ALJ's Decision of June 10, 2022).

documenting normal joints exam). But, there are also notes from other providers tending to support these findings. See, e.g., Tr. at 474 (September 15, 2020 note documenting Plaintiff's reported history of painful joints "left more than right hand," with the left hand having "decreased grip"), 556, 563 (November 5, 2020 note stating Plaintiff had normal gait on exam but reported "LT arm numbness"), 784, 787 (January 12, 2021 note documenting joint tenderness in upper extremities). In any event, the reliance on some normal exam findings to reject others appears inconsistent with the dictates of SSR 12-2p's explicit observation that a fibromyalgia patient has "good days and bad days" and dictate that an adjudicator must take this into account.

Overall, the ALJ's determination not to accept Dr. Weiss and Ms. Meyer's findings and opinions cannot be upheld as supported by substantial evidence. Further, although the ALJ purported to take into account the longitudinal record in considering Plaintiff's fibromyalgia and its effects, for all of the foregoing reasons, the undersigned is not convinced he actually did so.

## V.  Conclusion

In light of the foregoing, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the

following instructions:

    (A)    Reconsider the effects of Plaintiff's fibromyalgia and the medical opinions regarding this matter; and

    (B)    Take such other action as may be necessary to resolve these claims properly.

    2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 13, 2024.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record